**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| VIDEOSHARE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE, INC; and YOUTUBE LLC,<br><br>Defendants. | Civil Action No: 13-cv-990-GMS<br><br>**Jury Demanded** |
| VIDEOSHARE, LLC,<br><br>Plaintiff,<br><br>v.<br>VIMEO, LLC,<br><br>Defendant. | Civil Action No: 13-cv-992-GMS<br><br>**Jury Demanded** |

# VIDEOSHARE'S OPENING CLAIM CONSTRUCTION BRIEF

Dated: August 21, 2015

Gregory S. Dovel (admitted *pro hac vice*)
Richard E. Lyon (admitted *pro hac vice*)
Simon Franzini (admitted *pro hac vice*)
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Telephone: 310-656-7066
Facsimile: 310-657-7069
Email: greg@dovellaw.com
Email: rick@dovellaw.com
Email: simon@dovellaw.com

Brian E. Farnan (Bar No. 4089)
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301
bfarnan@farnanlaw.com

*Counsel for Plaintiff VideoShare, LLC*

# Table of Contents

I. "a receiving computer" ('608, claims 1, 14) / "a first computer" ('302, claim 1) ........ 1

A. Dispute 1: "one or more computers" vs. "a computer" ........ 1

B. Dispute 2: Can the operation of receiving a video file be performed by "one component of" a receiving computer? ........ 2

II. "associating the streaming video file with the advertisement" ('302, claims 1, 14) / "selectively associates the streaming video file with an advertisement based on pre-determined criteria" ('302, claim 13) ........ 4

III. "streaming video file comprising a streaming video format" ('608, claims 1, 14; '302, claims 1, 14). ........ 5

IV. "embedding the identification tag comprising the video frame image into a webpage" ('608, claims 1, 14) / "embedding the identification tag into a web page" ('302 claims 1, 14). ........ 6

V. "receiving, via a webpage, a request to transmit the streaming video file" ('302, claim 1) / "transmitting, via a web page, the streaming video file and the advertisement to a second [tenth] computer on the network" ('302, claims 1, 14). ........ 8

VI. "comprising a video frame image representing a subject matter of the streaming video file and identifying the streaming video file" ('608, claims 1, 14) / "comprises a video frame image selected from the streaming video file, the video frame image representing a subject matter of the streaming video file" ('302, claim 2). ........ 8

A. Dispute 1: Can "a video frame image" be any of the images in the sequence of images (VideoShare's position) or must it be the middle image (Defendants' position)? ........ 8

B. Dispute 2: Does the claim language require "a URL or hyperlink" (Defendants' position) or must the video frame image be a "reference image [used] to identify the video" (VideoShare's position)? ........ 9

VII. "executing in response to receiving the video, an automated function automatically performing each of" ('608, claims 1, 14). ........ 10

A. Dispute 1: Do step (1) "converting," step (2) "generating," and step (3) "embedding" need to be performed in order? ........ 10

1. There is no logical or grammatical requirement that step 1 "converting" be performed before step 2 "generating" or step 3 "embedding." ..... 10

2. The specification does not require that the claim steps be performed in order. ..... 11

B. Dispute 2: Does "executing … an automated function automatically performing" preclude any interaction between the user and receiving computer? ..... 12

VIII. "first computer" / "second computer" / "third computer" / "fourth computer" / "fifth computer" / "sixth computer" / "seventh computer" / "eighth computer" / "ninth computer" ('302, claim 14). ..... 14

A. VideoShare's proposal should be adopted. ..... 14

B. The "computer" limitations are not means-plus-function limitations. ..... 15

IX. dependent claims 15 and 16 of the '302 patent. ..... 17

X. means-plus-function elements ('608, claim 14). ..... 18

A. "format conversion module" ('608, claim 14). ..... 19

B. "identification module" ('608, claim 14). ..... 20

# Table of Authorities

## Cases

*Altiris, Inc. v. Symantec Corp.*,
318 F.3d 1363 (Fed. Cir. 2003)........................................................................ 10, 12
*Apex Inc. v. Raritan Computer, Inc.*,
325 F.3d 1364 (Fed. Cir. 2003)........................................................................ 16
*Aristocrat Techs. v. Int'l Game Tech.*,
521 F.3d 1328 (Fed. Cir. 2008)........................................................................ 18
*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*,
512 F.3d 1338 (Fed. Cir. 2008)........................................................................ 1, 9, 12
*Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*,
616 F.3d 1249 (Fed. Cir. 2010)........................................................................ 1
*Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*,
412 F.3d 1291 (Fed.Cir.2005)........................................................................ 19
*Finisar Corp. v. DirecTV Group, Inc.*,
523 F.3d 1323 (Fed. Cir. 2008)........................................................................ 18
*Golden Bridge Tech., Inc. v. Apple Inc.*,
758 F.3d 1362 (Fed. Cir. 2014)........................................................................ 3
*Helmsderfer v. Bobrick Washroom Equip., Inc.*,
527 F.3d 1379 (Fed. Cir. 2008)........................................................................ 6
*i4i Ltd. P'ship v. Microsoft Corp.*,
598 F.3d 831 (Fed. Cir. 2010)........................................................................ 6, 8
*Innogenetics, N.V. v. Abbott Labs.*,
512 F.3d 1363 (Fed. Cir. 2008)........................................................................ 4
*Int'l Rectifier Corp. v. IXYS Corp.*,
361 F.3d 1363 (Fed. Cir. 2004)........................................................................ 6
*Interactive Gift Express, Inc. v. Compuserve Inc.*,
256 F.3d 1323 (Fed. Cir. 2001)........................................................................ 11
*InterDigital Commc'ns, LLC v. Int'l Trade Comm'n*,
690 F.3d 1318 (Fed. Cir. 2012)........................................................................ 4
*Invensas Corp. v. Renesas Electronics Corp.*,
2013 WL 3753621 (D. Del. July 15, 2013) ............................................................ 12
*Kara Tech. Inc. v. Stamps.com Inc.*,
582 F.3d 1341 (Fed. Cir. 2009)........................................................................ 7
*Lighting World, Inc. v. Birchwood Lighting, Inc.*,
382 F.3d 1354 (Fed. Cir. 2004)........................................................................ 16
*Linear Tech. Corp. v. Impala Linear Corp.*,
379 F.3d 1311 (Fed. Cir. 2004)........................................................................ 17
*Linear Tech. Corp. v. ITC*,
566 F.3d 1049 (Fed. Cir. 2009)........................................................................ 14
*Micro Chem., Inc. v. Great Plains Chem. Co.*,
194 F.3d 1250 (Fed. Cir. 1999)........................................................................ 19, 20
*Oatey Co. v. IPS Corp.*,
514 F.3d 1271 (Fed. Cir. 2008)........................................................................ 14

*Personalized Media Communications, LLC v. Int'l Trade Comm'n*,
161 F.3d 696 (Fed. Cir. 1998)........................................................................................16, 17

*Phillips v. AWH Corp.*,
415 F.3d. 1303 (Fed. Cir. 2005)........................................................................................2, 4

*Pragmatus Telecom, LLC v. Volkswagen Grp. of Am., Inc*,
2014 WL 4447272 (D. Del. Sept. 9, 2014)........................................................................19

*Rexnord Corp. v. Laitram Corp.*,
274 F.3d 1336 (Fed. Cir. 2001)..........................................................................................3

*SiRF Tech., Inc. v. ITC*,
601 F.3d 1319 (Fed. Cir. 2010)..........................................................................................6

*Smartflash LLC v. Apple Inc.*,
2015 WL 4208754 (E.D. Tex. July 7, 2015)......................................................................17

*State Street Bank & Trust Co. v. Signature Fin. Group*,
149 F.3d 1368 (Fed. Cir. 1998)..........................................................................................18

*Williamson v. Citrix Online, LLC*,
2015 WL 3687459 (Fed. Cir. June 16, 2015)....................................................................16

*WMS Gaming Inc. v. International Game Tech.*,
184 F.3d 1339 (Fed. Cir. 1999)..........................................................................................18

## Abbreviations and Citations

1. "App" refers to Appendix A filed with this brief, which includes the parties' competing constructions for each disputed term in the order presented in the brief. Language within the parties' proposed constructions is highlighted in yellow to illustrate key differences in the parties' constructions.

2. Emphasis: Unless otherwise noted, all emphases appearing within quotations in this brief were added for purposes of this brief and do not appear in the original source.

3. "'302" and "'608" refer respectively to asserted patents 8,464,302 and 8,438,608. Citations are identified by column and line number.

4. "Almeroth" refers to the accompanying expert declaration of Professor Kevin Almeroth. Any exhibit numbers in this brief refer to exhibits to Professor Almeroth's declaration.

5. VS-PROHIST002275 and VS-PROHIST002276 refer to Bates numbers corresponding to the Applicant's Amendment and Response to Non-Final Office Action, dated February 27, 2013, which the applicant submitted to the Patent Office during the prosecution of the '608 patent. This portion of the prosecution history will be included in the Joint Appendix filed by the parties.

## I. "a receiving computer" ('608, claims 1, 14) / "a first computer" ('302, claim 1)

The parties' constructions raise two disputes.

### A. Dispute 1: "one or more computers" vs. "a computer"

The parties dispute whether "a receiving computer" in the '608 patent and "a first computer" in the '302 patent must be one "distinct computer" (Defendants' position), or whether they may be made up of "one or more" computers (VideoShare's position). Controlling law compels that VideoShare's position be adopted.

*First*, "an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising.' … That 'a' or 'an' can mean 'one or more' is best described as a rule, rather than merely as a presumption or even a convention." *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342-1343 (Fed. Cir. 2008). Here, the claim language "a receiving computer" follows the transitional phrase "comprising." '608, claim 1 ("comprising the steps of: receiving by a receiving computer"). So does the claim language "a first computer." '302, claim 1 ("comprising: executing, by a first computer). Accordingly, the rule that "a" means "one or more" applies.

*Second*, the subject matter of a dependent claim necessarily falls within the scope of the independent claim from which it depends. *See* 35 U.S.C. § 112(d). Dependent claim 7 of the '302 patent is "The method of claim 1, wherein the first computer comprises a plurality of computers." Similarly, claim 11 of the '608 patent is "The method of claim 1, wherein the receiving computer comprises a plurality of computing devices." Accordingly, "a first computer" and "a receiving computer" necessarily include more than one computer. Moreover, because Defendants' constructions "render[] asserted claims facially nonsensical," they "cannot be correct." *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1255 (Fed. Cir. 2010) (internal quotations omitted). For example, applying Defendants' interpretation,

claim 7 of the ‘302 patent would be, “wherein the first computer, which cannot be a plurality of computers, comprises a plurality of computers.”

*Third*, Defendants’ constructions are refuted by the intrinsic record. When explaining the meaning of “a receiving computer” during prosecution, the patentee explained that “a receiving computer” refers to “a server” made up of “the server-side computer(s) or computer system(s).” VS-PROHIST002275. The specifications reiterate that “[t]he server computer 1400 can be implemented using one or more server computers.” ‘608, 9:51-52; ‘302, 6:34-35.

### B. Dispute 2: Can the operation of receiving a video file be performed by “one component of” a receiving computer?

VideoShare’s construction allows for the “receiving computer” to perform operations in addition to receiving a video file (i.e., while “one component of” the receiving computer is for receiving a video file, other components may perform other operations). Defendants propose that “a receiving computer” be limited to a “distinct computer for receiving,” which in turn would allow them to argue that the sole, or “distinct,” operation of the “receiving computer” is receiving a video file, and thus the receiving computer cannot perform other operations.

**claim language:** “[T]he context of the surrounding words of the claim … must be considered.” *Phillips v. AWH Corp.*, 415 F.3d. 1303, 1314 (Fed. Cir. 2005) (internal quotations omitted). Here, the claim language tells us that a “receiving computer” not only performs the operation of receiving a video file, but it also performs the operations of “(b1) converting the video file …, (b2) generating an identification tag …, [and] (b3) embedding the identification tag … into a web page.” ‘608, claim 1, 30:3-17. VideoShare’s position is thus compelled by, and Defendants’ refuted by, the claim language itself.

**specification:** Defendants’ position is also refuted by the specification, which teaches

modules[1] of the receiving computer that perform additional operations. *See, e.g.*, '608, 4:20-31 ("the receiving computer comprising: [not only]… (ii) a receiving module …; [but also] (iv) a format conversion module …; [and] (vi) an identification module."); Fig 1C (depicting a "receiving computer" made up modules in addition to "receiving module 1520," including "format conversion module 1540," and "identification module 1560.").

**prosecution history:** VideoShare's position is further cemented by the prosecution history. A court must consider the prosecution history when there is "a clear and unmistakable assertion by the patentee to the PTO of the meaning and scope of the term." *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1366 (Fed. Cir. 2014). During prosecution, the patentee clearly and unmistakably asserted to the PTO that "a receiving computer" can include (1) a component that receives the video file and (2) separate components that perform the claimed operations (b1)-(b3). See VS-PROHIST002275-2276 (explaining that "a receiving computer" includes both (1) "the component that interfaces with" and thus has a "client-server relationship with the computer from which the video file was sent," i.e., the component that receives the video file, and (2) "each component of the computer system" that does not "have a client-server relationship with the computer from which the video file was sent" but instead "performs the various steps that make up the automatic function," i.e., operations (b1), (b2), and (b3). *Id.* [2]

---

[1] Adopting the definition of "module" in the specification ('608, 7:13-15), the parties agree that a "module" is an "assemblage of one or more parts of software, firmware, and/or hardware that accomplishes a defined function or task." D.I. 52 at 12.

[2] Claim 14 of the '608 patent repeats the term "receiving computer" five times. Defendants advance a different construction for the fifth instance of "receiving computer" than they do for the other four. They contend that fifth should be construed as a "means-plus-function" limitation. This contention fails. *First*, a "claim term should be construed consistently with its appearance in other places in the same claim." *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001). *Second*, as demonstrated in Section VIII(B) below, "computer" is a structural term not subject to means-plus-function construction.

## II. "associating the streaming video file with the advertisement" ('302, claims 1, 14) / "selectively associates the streaming video file with an advertisement based on pre-determined criteria" ('302, claim 13).

Both sides' proposals track the claim language except Defendants replace "advertisement" with "advertisement selected by the user." Defendants' additional limitation finds no support in the claim language and is refuted by the specification.

**claim language:** "Words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art." *Innogenetics, N.V. v. Abbott Labs*., 512 F.3d 1363, 1370 (Fed. Cir. 2008). Here, (a) the words "selected by the user" do not appear in the claim language, and (b) the plain and ordinary meaning of the actual language includes no requirement (or suggestion) that the advertisement must be "selected by the user."

**specification:** The specification confirms that there is no basis for Defendants to import their "selected by the user" limitation. Under Federal Circuit law, "[t]he plain meaning of claim language ordinarily controls unless [1] the patentee acts as his own lexicographer and provides a special definition for a particular claim term or [2] the patentee disavows the ordinary scope of a claim term either in the specification or during prosecution." *InterDigital Commc'ns, LLC v. Int'l Trade Comm'n*, 690 F.3d 1318, 1324 (Fed. Cir. 2012) (enumeration added).

Here, Defendants cannot point to any (1) definition or (2) disavowal to support their "selected by the user" limitation. Instead, Defendants commit "one of the cardinal sins of patent law—reading a limitation from the written description into the claims," *Phillips*, 415 F.3d at 1320. Defendants look to "one embodiment" in the written description that includes the "step of offering to a sender an opportunity to indicate a selection of an advertisement." '302, 2:24-25. What's worse, Defendants construction excludes a preferred embodiment where the advertisement is not selected by the user, but is instead selected by the computer system. '302, 15:36-37 ("The VideoShare host computer 60 can select an advertisement."); 2:58-59 ("The

criterion can include leaving the selection to the determination of the server computer system.”).

### III. “streaming video file comprising a streaming video format” (‘608, claims 1, 14; ‘302, claims 1, 14).

Both sides’ proposals track the claim language, but Defendants replace “streaming video format” with “format characteristics and format identifiers.” [3] “[F]ormat characteristics and format identifiers” is not a definition for “streaming video format.” Nor does having “format characteristics and format identifiers” tell us anything about whether a given format is a “streaming video format.”[4] Indeed, *any* video format, including those that are *not* “video streaming formats” can have “format characteristics and format identifiers.”

So where do Defendants get this language? The record includes a single reference to “format characteristics and format identifiers:”

> An analyzer module 1530 determines whether the received video segment is in a streaming video format. The determination of a format can be carried out by comparing the format to known format characteristics and format identifiers.

‘608, 14:22-25. And how is this passage relevant to the meaning of “streaming video format”? It is not. <u>*First*</u>, this passage appears in the ‘608 patent; it does not appear in the ‘302 patent, and the two patents are not part of the same patent family. The entire intrinsic record of the ‘302 patent includes no mention of “format characteristics and format identifiers.” <u>*Second*</u>, the passage is not a definition or disavowal of “streaming video format” or “streaming video file.” <u>*Third*</u>, the passage relates to an unclaimed step and, under Federal Circuit law, it is improper to add requirements of an unclaimed step to the claim language. *See, e.g., SiRF Tech., Inc. v. ITC,*

---

[3] Although the patent uses this claim language consistent with its customary and ordinary meaning, VideoShare also provides an alternative construction, detailed in the accompanying Almeroth declaration, that explains what that customary and ordinary meaning is: “video file containing data arranged in a way that the file is capable of (a) being transmitted over a network and (b) being played before all of its data is fully transmitted.” Almeroth, ¶¶ 28-36.

[4] “Format characteristics and format identifiers” are “features or properties that can be used to identify a format.” Almeroth, ¶ 33.

601 F.3d 1319, 1330 (Fed. Cir. 2010). In particular, this passage relates to the unclaimed step of determining whether a video is in streaming video format (performed by the "analyzer module"), not the claimed step of converting a video file into streaming video format (performed by the "format conversion module"). *See* '608, 14:22-23; 14:32-34.

## IV. "embedding the identification tag comprising the video frame image into a webpage" ('608, claims 1, 14) / "embedding the identification tag into a web page" ('302 claims 1, 14).

The parties' proposals track the claim language except Defendants (1) replace "web page" with "website" and (2) add the modifier "remote from the receiving computer." Both (1) and (2) run afoul of basic principles of claim construction.[5]

**(1) "<u>website</u>."** Defendants ask the Court to rewrite the claim language and replace the actual language "web page" with "website." But "[c]ourts cannot rewrite claim language." *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1383 (Fed. Cir. 2008). "Had the inventors intended [the term "website"], they could have drafted the claims to expressly include it." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 843 (Fed. Cir. 2010). Instead, the inventors used the term "web page," which has a fundamentally different meaning than "website." While a "web page" refers to a document, a "website" refers to a location. *See, e.g., Random House Webster's Computer & Internet Dictionary* (3rd ed. 1999) (Ex. 2), p. 606 (defining "web page" as a "<u>document</u> on the World Wide Web" and "website" as a "site (<u>location</u>) on the World Wide Web" that "contains … documents."); Almeroth, ¶40-43. Without a clear disavowal or definition (there is none), it would be error to replace "web page" with "website" and disregard the distinction between the terms. *See Int'l Rectifier Corp. v. IXYS Corp.*, 361 F.3d 1363, 1373-74 (Fed. Cir. 2004) (reversing district court construction of "adjoining" as "adjacent," because

[5] Although ordinary meaning controls here, VideoShare also provides an alternative construction that applies the ordinary meaning. Almeroth, ¶¶37-45.

that "disregards … the distinction between the two terms.").

**(2) "website remote from the receiving computer."** No principle of claim construction supports rewriting claim language to include a word distinct from the actual claim language, and then using the alternative word as a basis for importing an additional limitation into the claims. But that is what Defendants do here. After changing "web page" to "website," Defendants ask the Court to further restrict "website" to those that are "remote from the receiving computer." The concept of "remote" (as opposed to local) concerns location, a concept that is absent from the claims altogether unless "web page" is improperly replaced with "website." Because rewriting the claims to introduce the concept of location is itself error, it would only compound this error to restrict the claim language to a particular location.

Moreover, Defendants cannot point to any definition or claim disavowal that supports their proposed limitation. Instead, they can only point to language describing "embodiments [in which] the identification tag can be … embedded into a Web page on a remote site." '608, 17:44-46. It is improper to "limit [an inventor] to his preferred embodiment or import a limitation from the specification into the claims." *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1347-1348 (Fed. Cir. 2009). Moreover, the "remote site" referenced in this embodiment is not a "website remote from the receiving computer." The specification never once references a "website remote from the receiving computer." When the specification references a "remote website," it does so in the context of the viewer, not the receiving computer. *See, e.g.*, '608, 16:65-67 ("video segment embedded into the remote website so that a viewer who visits the remote website sees the video segment as part of the page that is presented"); '302, 7:1-3. In context, therefore, "remote website" refers to a website remote from the viewer, not a website remote from the receiving computer. Almeroth, ¶45.

**V. "receiving, via a webpage, a request to transmit the streaming video file" ('302, claim 1) / "transmitting, via a web page, the streaming video file and the advertisement to a second [tenth] computer on the network" ('302, claims 1, 14).**

*First*, Defendants' attempt to import "remote from the receiving computer" into the claim language should be rejected for the same reasons addressed in the previous section. *Second*, Defendants' attempt to add "from a user" and "to the user that transmitted the request" should also be rejected because these limitations are not found in the claim language. "Had the inventor[] intended th[ese] limitation[s], [he] could have drafted the claims to expressly include [them]." *i4i*, 598 F.3d at 843 (Fed. Cir. 2009). *Third*, Defendants' limitation that the video must be transmitted "to the user that transmitted the request" is inconsistent with the express claim language that requires transmission to a particular computer, not user, i.e. "a second [tenth] computer on the network." Moreover, the specification teaches to "send [the video] to user (or user's designee)," i.e., someone other than the user. *See* '608, Fig. 1B at 1440.

**VI. "comprising a video frame image representing a subject matter of the streaming video file and identifying the streaming video file" ('608, claims 1, 14) / "comprises a video frame image selected from the streaming video file, the video frame image representing a subject matter of the streaming video file" ('302, claim 2).**

The parties' constructions raise two disputes for the Court to resolve.

**A. Dispute 1: Can "a video frame image" be any of the images in the sequence of images (VideoShare's position) or must it be the middle image (Defendants' position)?**

**claim language:** The claim language uses the term "video frame image" consistent with its plain and ordinary meaning: "an image in a sequence of images in the video file" *See, e.g.*, *Random House Webster's Computer & Internet Dictionary* 228 (3rd ed. 1999) (Ex. 2) (defining "frame" as "In video and animation, a single image in a sequence of images."); *Webster's New World Dictionary of Computer Terms* 208 (6th ed. 1997) (Ex. 4) (defining "frame" as "In animation and video, one of the still images."); Almeroth, ¶¶46-54. There is nothing in the claim

language that requires or even suggests a particular image in the sequence, much less "the middle image" required by Defendants' construction. To the contrary, the disputed claim language tells us that "a video frame image" does not need to be the middle image. The '302 claim language specifies that "a video frame image" is an image "selected from the streaming video file." If "a video frame image" was necessarily limited to "the middle image," there would be no need for a selection. Moreover, only VideoShare's construction—in particular, "informative as to a subject matter contained in the video"—accounts for additional claim language: "representing a subject matter of the streaming video file." [6, 7]

**(b) specification:** Defendants lift their construction not from any definition or disavowal in the intrinsic record but from a description of one embodiment: "In one embodiment, the VideoShare Producer 20 software creates the 'thumbnail' [i.e., the video frame image] by taking the 'middle' image of the entire video file, as measured by the temporal duration of the file." '608, 22:63-66. Although basing a construction on an embodiment is itself improper, it is worse here given that the very next sentence teaches another embodiment where the "thumbnail" is not the middle image: "In another embodiment, the selection of an image from which to make the 'thumbnail' can be left to the discretion of the user." '608, 22:66-23:1.

### B. Dispute 2: Does the claim language require "a URL or hyperlink" (Defendants' position) or must the video frame image be a "reference image [used] to identify the video" (VideoShare's position)?

Defendants construe the language "video frame image … identifying the streaming video

---

[6] VideoShare's proposal also aligns with the Summary of the Invention's description that the "video frame image" identifier is "an image that represents the content or subject matter of the video." '608, 2:1-2; '302:66-2:1; *see also* '608, 22:54-64; '302, 16:54-58 (teaching that the "thumbnail identifier," or "still image… identifier" is informative as "the subject matter or content of the video.")

[7] Defendants' construction also runs contrary to the "rule" that the article "a" following the transitional phrase "comprising" (as in "comprising a video frame image") means "one or more." *See Baldwin*, 512 F.3d 1338 at 1342-1343 (quoted *supra*).

file" appearing in the '608 claims as requiring "a URL or hyperlink to the streaming video file." Not only is this requirement wholly absent from the claim language, but it is contrary to the specification's teaching of how a video frame image identifies the streaming video file. As reflected in VideoShare's construction, the specification teaches that the video frame image "is used as a reference image to identify the video." In contrast to the "typical" way to "identify a file" (i.e., by a locater like a URL or directory location), the system presents the user with a "still image … used as a reference image to the entire video file. It is an identifier of the subject matter or content of the video that a user or a viewer can readily recognize." '302, 16:54-58. The "snapshot of the video file [is] an identifier that a user or a viewer can observe." *Id.*, 15:6-7. Requiring the video to be identified by way of "a URL or hyperlink," instead of using the "video frame image" as a reference image to identify the video, is thus contrary to the specification.

## VII. "executing in response to receiving the video, an automated function automatically performing each of" ('608, claims 1, 14).

The parties' constructions raise two disputes for the Court to resolve.

### A. Dispute 1: Do step (1) "converting," step (2) "generating," and step (3) "embedding" need to be performed in order?

Under controlling law, Defendants' "in order" requirement fails. Claim steps that do not expressly recite an order, like those at issue here, are only construed as limited in order if: (1) "as a matter of logic or grammar, they must be performed in the order written" or (2) "the rest of the specification . . . directly or implicitly requires such a narrow construction." *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1370 (Fed. Cir. 2003). Neither (1) nor (2) applies here.

#### 1. There is no logical or grammatical requirement that step 1 "converting" be performed before step 2 "generating" or step 3 "embedding."

As a matter of logic and grammar, "generating an identification tag comprising a video frame image representing a subject matter of the streaming video file and identifying the

streaming video file" (step 2) need not occur before "converting the video file into a streaming video file comprising a streaming video format" (step 1) because no limitation of claim 2 relies on step 1 being already performed. To the contrary, the system can "generate[] an identification tag comprising a video frame image"—i.e., generate a thumbnail identifier, or a still image from the video—regardless of whether the video has been converted to a streaming video format (i.e., step 1). And this thumbnail identifier "identifies" and "represents a subject matter of" "the streaming video" regardless of whether the thumbnail is generated from the pre- or post-conversion video file (i.e., before or after step 1) because both the contents by which the video can be identified (i.e., the various images that make up the video) and the subject matter of the video remain the same pre- and post-conversion (only its format is different).[8]

Moreover, Federal Circuit law rejects any contention that antecedent basis compels an order requirement—e.g., the argument that step 2 must be performed after step 1 because step 2 references "the streaming video file" that was first introduced as "a streaming video file" in step 1. Instead, antecedent basis merely means that both steps refer to the same "streaming video file." *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1328, 1343 (Fed. Cir. 2001) (holding that step one of a method claim can be performed after step four, even though step four referred to "<u>the</u> catalog code" introduced in step one, because "there is no reason why step one[] . . . must occur before step four[]").

**2. The specification does not require that the claim steps be performed in order.**

Under controlling Federal Circuit law and prior holdings of this Court, an "in order" limitation cannot be read into the claims simply because the only embodiment disclosed in the

[8] Similarly, once the thumbnail identifier has been created (step 2), there is no logical or grammatical reason why it cannot be embedded into a web page (step 3) before the video file is converted into streaming video format (step 1).

specification discloses such an order. Instead, to impose an "in order" limitation in the claims, the specification must "unequivocally preclude a different order of steps" by emphasizing that the "order is important" or "disclaim[ing] any other order of steps." *See Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1346 (Fed. Cir. 2008) (reversing district court's "in order" construction where the specification taught a particular order of steps but did not "unequivocally preclude a different order of steps"); *Altiris Inc. v. Symantec Corp.*, 318 F.3d 1363, 1371 (emphasis added) (reversing district court's "in order" construction where the only embodiment disclosed had a particular order of steps because [n]owhere … is there any statement that this order is important, any disclaimer of any other order of steps, or any prosecution history indicating a surrender of any other order of steps."); *Invensas Corp. v. Renesas Electronics Corp.*, No. CV 11-448-GMS, 2013 WL 3753621, at *2 (D. Del. July 15, 2013) (J. Sleet) (same).

Here, Defendants cannot point to any disclosure in the specification that unequivocally precludes a different order of steps.[9] There is no statement that the disclosed order is important, nor is any other order disclaimed. In fact, the specification explicitly states that order is not important, and other orders are not disclaimed. '608, 26:41–49 ("the precise order of some of the steps … can be interchanged without a different outcome") ("interchanges in sequence are possible … without a different outcome.") As explained above, the order of format conversion (step 1) relative to creating and embedding of an "identification tag" into a web page (steps 2 and 3) makes no difference in the outcome of the overall process.

**B. Dispute 2: Does "executing … an automated function automatically performing" preclude any interaction between the user and receiving computer?**

Defendants' "without a user interaction with the receiving computer" limitation—which

---

[9] In their identification of intrinsic evidence for this claim term (D.I. 52 at 12), Defendants cite a single passage ('608, 21:20-23) that is wholly irrelevant to the order of steps.

seeks to exclude *any* back and forth between the receiving computer and the user during the performance of the automated function—is contrary to the claim language and the specification.

**claim language:** As reflected in VideoShare's proposal, the ordinary meaning of "executing an automated function automatically performing" is carrying out computer instructions to accomplish the function instead of depending on a human operator. *See, e.g., McGraw Hill Computer Desktop Encyclopedia* at 55, 331 (9th ed. 2001) (Ex. 12) ("execute" means "to run a program (follow instructions in the program)") ("automation" means "the replacement of manual operations by computerized methods"); *IEEE Standard Dictionary of Electrical and Electronics Terms* 378 (6th ed. 1996) (Ex. 13) ("execute" means "to carry out an instruction, process, or computer program") ("automatic" means "pertaining to a function … that … functions without intervention by a human operator"); Almeroth, ¶¶ 55-57. Nothing about "executing an automated function" precludes interaction with the user during the performance of the automated function, as required by Defendants' proposal. In fact, the opposite is true of many common automated functions. For example, the tax software TurboTax automates tax calculations, but still interacts with the user during this automated process. *Id*.

**specification:** Defendants' construction, which precludes interactions between the user and the receiving computer during the automated function, is refuted by the specification, which explicitly teaches such interactions. For example, at step 640 (creating the "'thumbnail' identifier") of Fig. 6A, [10] the patent teaches an interaction where the user tells the receiving computer which thumbnail to use. *See id*., 22:67-23:1 ("the selection of an image from which to make the 'thumbnail' can be left to the discretion of the user"). Similarly, at step 630 of the flowchart, "[t]he user can select the desired bitrate by using the 'Settings Tab.'" *Id*., 22:30-31.

---

[10] "FIG. 6A is a flow diagram of an embodiment of the invention in which software automates a number of steps" including those at issue here. '608, 6:44-46.

## VIII. "first computer" / "second computer" / "third computer" / "fourth computer" / "fifth computer" / "sixth computer" / "seventh computer" / "eighth computer" / "ninth computer" ('302, claim 14).

We demonstrate why VideoShare's proposal should be adopted. We then demonstrate why the "computer" terms should not be construed as means-plus-function terms under §112 ¶ 6.

### A. VideoShare's proposal should be adopted.

We address each part of VideoShare's construction.

**(a) "may consist of two or more computers" and (c) "may be part of the same computer:"** The subject matter of a dependent claim necessarily falls within the scope of the independent claim from which it depends. *See* 35 U.S.C. § 112(d). Dependent claim 16 includes the limitation that "one or more the first computer, second computer, [etc.] … comprise a plurality of computers." Dependent claim 15 includes the limitation that "two or more of the first computer, second computer, [etc.] … are part of the same computer." Accordingly, the claim language tells us that each claimed "computer" may consist of two or more computers and may be part of the same computer.

**(c) "may include component parts that overlap:"** Federal Circuit law holds that numerical modifiers do not require entirely separate and distinct components; instead, the components may overlap. *See Linear Tech. Corp. v. ITC*, 566 F.3d 1049, 1055 (Fed. Cir. 2009) ("We agree with the Commission's construction of 'second circuit' and 'third circuit,' defining the terms broadly to not require entirely separate and distinct circuits."); *Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1275-77 (Fed. Cir. 2008) (holding that the phrase "first and second juxtaposed drain ports" does not require "two separate identifiable physical elements").

Moreover, each requirement of VideoShare's proposal is supported by the specification. This is undisputed, as reflected in Defendants' own proposals.

**(a) "<u>may consist of two or more computers</u>:"** In their own proposal, Defendants identify "host computer 60" as the "second computer," "fifth computer," and "sixth computer." D.I. 52. As the specification confirms, "host computer 60" <u>may consist of two or more computers</u>. *See* '302, 6:33-38;



FIG. 2

("The <u>host computer 60 includes one or more server computers</u> 62, 62', 62'' [and] … a storage array 64."); Fig. 2 (reproduced here relevant part).

**(b) "<u>may be part of the same computer:</u>"** Defendants identify (i) "storage array 64" as the claimed "fourth computer" (ii) "advertisement database 63" as the claimed "first computer" and (iii) "server computers 62, 62' 62" as the claimed "ninth computer." D.I. 52. As the specification—and Figure 2 in particular—confirms, each of these computers <u>is part of the same computer</u>, i.e., "host computer 60."

**(c) "<u>may include component parts that overlap</u>:"** The specification discloses that the claimed computers "may include component parts that overlap" because it discloses embodiments with (i) the entirety of "host computer 60" as certain of the claimed computers and (ii) components within "host computer 60" as other of the claimed computers.

**B. The "computer" limitations are not means-plus-function limitations.**

Defendants request that the Court create new law and construe the structural claim term "computer" as a means-plus-function limitation under §112 ¶ 6. This request must be rejected.[11]

A "claim term that does not use 'means' will trigger the rebuttable presumption that §112 ¶ 6 does not apply." *Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1371-72 (Fed.

[11] Although "computer for" is a common claim drafting convention, we were unable to find a single published opinion construing this language as a means-plus-function limitation.

Cir. 2003).[12] Because all of the "computer" limitations at issue here lack the term "means," the presumption applies. To overcome this presumption, Defendants must demonstrate that "the words of the claim are [not] understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Williamson*, 2015 WL 3687459, at *7. To have a sufficiently definite meaning as the name for structure, the limitation need not "evoke a particular structure," rather, it may describe a class of structures. *Personalized Media Communications, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 705 (Fed. Cir. 1998). For example, "even though the term 'detector' does not specifically evoke a particular structure, it does convey to one knowledgeable in the art a variety of structures known as 'detectors.'" *Id*. In contrast, if a claim term does not have a structural definition, but is instead a "nonce word" or "verbal construct" that is "tantamount to" the word "means"—like "widget," "mechanism," "element," "or "module"—then Section 112, ¶ 6 can apply. *Williamson*, 2015 WL 3687459, at *8.

The claim term at issue here—"computer"—has meaning to one of ordinary skill in the art; it is the name of a structure. It is not a nonce word. We could not ask one of ordinary skill in the art to pass us a "widget," or an "element, or a "module," because those terms, standing alone, have no meaning as the name of a structure. In contrast, we could ask for a "computer" (or a "detector" or a "circuit") because those are structures—in this case, tangible products—with known meanings.

When the evidence of record—e.g., expert testimony and technical dictionary definitions—demonstrates that a claim term has a structural definition generally known in the art,

---

[12] The presumption remains post-*Williamson*. In *Lighting World*, the presumption was elevated to an especially "strong one." *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1358 (Fed. Cir. 2004), But, after *Williamson* "we will apply the presumption as we have done prior to *Lighting World*." *Williamson v. Citrix Online, LLC,* 2015 WL 3687459 at *6 (Fed. Cir. June 16, 2015).

then Section 112, ¶ 6 does not apply. *See, e.g., Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1320 (Fed. Cir. 2004) (112, ¶ 6 does not apply because "[t]echnical dictionaries … indicate that the term 'circuit' connotes structure."); *Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 704 (Fed. Cir. 1998) (Section 112, ¶ 6 does not apply because "dictionary definitions [showed that] 'detector' had a well-known meaning to those of skill."); *Smartflash LLC v. Apple Inc*., 2015 WL 4208754, at *3 (E.D. Tex. July 7, 2015) (Section 112, ¶ 6 does not apply in light of "expert opin[ion] that the word 'processor' connotes structure to a person of ordinary skill in the art as 'a general-purpose processor that can be programmed to carry out specific functions,'" a meaning "reinforce[ed] … by "a technical dictionary").

Here, both expert testimony and technical dictionary definitions demonstrate that, like a detector, circuit, or processer, a "computer" has a structural definition generally known in the art. *See* Almeroth, ¶¶ 58-59; *McGraw Hill Computer Desktop Encyclopedia* 168 (9th ed. 2001) (Ex. 12) (defining computer as "a general-purpose machine that processes data according to a set of instructions that are stored internally either temporarily or permanently").

Accordingly, Defendants' attempt to construe the "computer" limitations as means-plus-function limitations under Section 112, ¶ 6 should be rejected.

## IX. dependent claims 15 and 16 of the '302 patent.

Defendants seek to rewrite dependent claims 15 and 16 in a way that is contrary to the claim language and the specification. Under Defendants' construction for claim 15, if several of the claimed computers—e.g. (a) "a first computer for receiving an advertisement," (b) "a fourth computer for storing a … video," and (c) "a ninth computer for transmitting … the … video"—are part a larger computer, then each of these computers must perform the functions of each of the other computers. But this is contrary to the specification. As demonstrated in the prior

section, the patent teaches an embodiment with (a) "advertisement database 63" as the claimed "first computer," (b) "storage array 64" as the claimed "fourth computer," and (c) "server computers 62" as the claimed "ninth computer," where each of (a), (b), and (c) are part of the larger "host computer 60." But there is no teaching or suggestion that (a) "advertisement database 63" is in any way involved with the operations of (b) storing a video, or (c) transmitting, much less a requirement that it must be. Defendants' proposal for claim 16 suffers the same flaws and must likewise be rejected.

**X. means-plus-function elements ('608, claim 14).**

The parties agree that "format conversion module" and "identification module" are "means-plus-function" elements and largely agree on the claimed function. The dispute focuses on the corresponding structure for each term.

When, as here, "the inventor has invoked means-plus-function claiming" in a "computer-implemented invention," "the corresponding structure … is the algorithm disclosed in the specification." *Aristocrat Techs. v. Int'l Game Tech*., 521 F.3d 1328, 1331, 1333 (Fed. Cir. 2008) (emphasis added). An algorithm is a "step-by-step process." *State Street Bank & Trust Co. v. Signature Fin. Group*, 149 F.3d 1368, 1374 (Fed. Cir. 1998) ("every step-by-step process, be it electronic or chemical or mechanical, involves an algorithm"). "This court permits a patentee to express that algorithm in any understandable terms including as a mathematical formula, in prose, or as a flow chart." *Finisar Corp. v. DirecTV Group, Inc*., 523 F.3d 1323, 1340-41 (Fed. Cir. 2008) (internal citations omitted). In particular, an algorithm can be expressed in the written description or depicted in a figure. *See WMS Gaming Inc. v. International Game Tech*., 184 F.3d 1339, 1348-49 (Fed. Cir. 1999) (While "[t]he written description of the … patent is almost completely devoid of any structure to support this limitation … the structure disclosed … is a microprocessor programmed to perform the algorithm illustrated in Figure 6").

### A. "format conversion module" ('608, claim 14).

The corresponding structure for the "format conversion module" for "converting … the video file into a streaming video file" is the module [13] of the receiving computer that, after it is determined whether video file is in a format that is compatible with streaming video format, performs the following algorithm:"



FIG. 6B

- Step 1 (depicted in blue): "If the … video … is not compatible with a streaming video format, it is converted to a compatible format." '608, 24:14-16.
- Step 2 (depicted in green): "[V]ideo is then temporarily stored." '608, 24:23.
- Step 3 (depicted in yellow): "The file is then converted to a streaming multimedia format file as indicated by the box 635." '608, 24:35-36.

Because "Optional compression of file" (step 623) "is optional, it cannot be part of the required corresponding structure." *Pragmatus Telecom, LLC v. Volkswagen Grp. of Am., Inc*, 2014 WL 4447272, at *5 (D. Del. Sept. 9, 2014) (citing *Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1299 (Fed. Cir. 2005)).

Defendants' proposed structure cannot be adopted. The law does not "permit incorporation of structure from the written description beyond that necessary to perform the claimed function." *Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999). Defendants identify the "DirectShow software" as the corresponding structure, but, unlike the specification's algorithm described above, DirectShow is not necessary to perform the claimed function. Not only does the DirectShow software pertain to only "one embodiment" but the specification describes DirectShow as relating to the optional step of "compression." *See, e.g.*, 5:7-13 ("In one embodiment, the format conversion module … comprises a format

[13] A "module" is an "assemblage of one or more parts of software, firmware, and/or hardware that accomplishes a defined function or task." D.I. 52 at 12.

conversion module that creates a Direct Show filter graph that decompresses.")

**B. "identification module" ('608, claim 14).**

The corresponding structure for the "identification module" for "generating an identification tag comprising a video frame image" is the module of the receiving computer that performs the following algorithm:



FIG. 6B

- Step 1 (depicted in blue): creating and temporarily storing a video frame image from the video file. '608, 24:46-49 ("The flow diagram indicates that the process makes [i.e. "create[s] and temporarily stores[s]," box 640 ] a 'thumbnail' of the video file.").
- Step 2: (depicted in yellow): creating an identification tag that incorporates the selected video frame image. '608, 25:5-8 ("creation of an identification tag [which includes the thumbnail identifier is] … depicted by box 655").

The steps at boxes 645 and 655 are not corresponding structure.[14]

Defendants' proposed structure again impermissibly "incorporates structure … beyond that necessary to perform the claimed function." *Micro Chem.*, 194 F.3d at 1258. Defendants broadly cite "host computer 60" and "Streaming Server D" both of which include numerous features wholly unrelated to generating an identification tag. *See, e.g.*, '608, 16:29-49; 8:28. Indeed, even the particular passages from the specification that Defendants incorporate in their identification of structure (D.I.52 at 9) identify numerous optional embodiments unnecessary to perform the claimed function. *See, e.g.*, '608, 17:43-46 ("in different embodiments, the identification tag can be provided to a user in the form of a URL … or linked to a message").

---

[14] Figure 6B depicts steps "carried out under the control of the VideoShare Producer 20 software," '608, 24:7-8, software that can operate "on the computer of a user" (embodiment 1) or "on a host computer," i.e., the receiving computer (embodiment 2). '608, 15:22-33. The claim language, and thus the corresponding structure, at issue here is limited to embodiment 2, the identification module "of the receiving computer." Accordingly, the steps at box 645 (sending "to host computer") and box 655 ("on user's computer"), which only occur in embodiment 1, are not corresponding structure.

Dated: August 21, 2015

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301
bfarnan@farnanlaw.com

Gregory S. Dovel (admitted *pro hac vice*)
Richard E. Lyon (admitted *pro hac vice*)
Simon Franzini (admitted *pro hac vice*)
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Telephone: 310-656-7066
Facsimile: 310-657-7069
Email: greg@dovellaw.com
Email: rick@dovellaw.com
Email: simon@dovellaw.com

*Counsel for Plaintiff VideoShare, LLC*