**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| VIDEOSHARE, LLC, a Delaware limited liability company ,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE, INC, a Delaware corporation; and YOUTUBE LLC, a Delaware limited liability company.<br><br>Defendant. | Civil Action No: 13-cv-990 (GMS)<br><br>**Jury Demanded** |
| VIDEOSHARE, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>VIMEO, LLC, a Delaware limited liability company.<br><br>Defendant. | Civil Action No: 13-cv-992 (GMS)<br><br>**Jury Demanded** |

**VideoShare's Reply Claim Construction Brief**

Dated: September 18, 2015

Simon Franzini (admitted *pro hac vice*)
Richard E. Lyon (admitted *pro hac vice*)
Simon Franzini (admitted *pro hac vice*)
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Telephone: 310-656-7066
Facsimile: 310-657-7069

Brian E. Farnan (Bar No. 4089)
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301
bfarnan@farnanlaw.com

*Counsel for Plaintiff VideoShare, LLC*

**Table of Contents**

I. "a receiving computer" ('608, claims 1, 14) / "a first computer" ('302, claim 1) ....................1

II. "associating …" limitations ('302, claims 1, 14; '302, claim 13). ....................1

III. "streaming video file comprising a streaming video format" ('608, claims 1, 14; '302, claims 1, 14). ....................2

IV. "embedding the identification tag [comprising the video frame image] into a webpage" ('608, claims 1, 14; '302 claims 1, 14). ....................3

V. "receiving, via a webpage …" / "transmitting via a web page …" ('302, claims 1, 14). ....................4

VI. "a video frame image …" limitations ('608, claims 1, 14; '302, claim 2). ....................5

VII. "executing in response to receiving the video, an automated function automatically performing each of" ('608, claims 1, 14). ....................7

VIII. "computer" limitations of '302 patent, claim 14 ("first," "second," "third" etc.) ....................8

IX. Dependent claims 15 and 16 of the '302 patent. ....................9

X. Means-plus-function elements ('608, claim 14). ....................9

## Table of Authorities

### Cases

*Absolute Software, Inc. v. Stealth Signal, Inc.*,
659 F.3d 1121 (Fed. Cir. 2011)........................................................................................ 2

*Apple Inc. v. Motorola, Inc.*,
757 F.3d 1286 (Fed. Cir. 2014)........................................................................................ 9

*Aristocrat Techs. v. Int'l Game Tech.*,
521 F.3d 1328 (Fed. Cir. 2008)........................................................................................ 9

*Interactive Gift Exp., Inc. v. Compuserve Inc.*,
256 F.3d 1323 (Fed. Cir. 2001)........................................................................................ 7

*Linear Tech. Corp. v. ITC*,
566 F.3d 1049 (Fed. Cir. 2009)........................................................................................ 8

*Microsoft Corp. v. Multi-Tech Sys., Inc.*,
357 F.3d 1340 (Fed. Cir. 2004)........................................................................................ 5

*O2 Micro Int'l. Ltd. v. Beyond Innovation Tech.*,
521 F.3d 1351 (Fed. Cir. 2008)........................................................................................ 8

*Praxair, Inc. v. ATMI, Inc.*,
543 F.3d 1306 (Fed. Cir. 2008)........................................................................................ 2

*United States v. Telectronics, Inc.*,
857 F.2d 778 (Fed. Cir. 1988)........................................................................................... 3

*Williamson v. Citrix Online, LLC*,
792 F.3d 1339 (Fed. Cir. 2015)................................................................................... 8, 9

**Abbreviations and citations**

1. “App” refers to Appendix A to this brief, which includes the parties’ competing constructions for each disputed term. Language within the parties’ proposed constructions is highlighted in yellow to illustrate key differences in the parties’ constructions. Appendix A updates the appendix submitted with VideoShare’s opening brief to include changes to the parties’ constructions made after submission of the opening briefs.

2. Emphasis: Unless otherwise noted, all emphases appearing within quotations in this brief were added for purposes of this brief and do not appear in the original source.

3. “V.Br.” refers to VideoShare’s opening claim construction brief. “D.Br.” refers to Defendants’ opening claim construction brief.

4. “Def. Arg.” refers to an argument made by Defendants in their opening brief.

5. “‘302” and “‘608” refer respectively to asserted patents 8,464,302 and 8,438,608. Citations are identified by column and line number.

6. “Almeroth” refers to the declaration of Professor Kevin Almeroth served with VideoShare’s opening brief. “Alm.Rpl.” refers to the reply declaration of Professor Almeroth accompanying this reply brief. Any exhibit numbers in this brief refer to exhibits to Professor Almeroth’s declarations.

7. VS-PROHIST002273-002276 and VS-PROHIST001561 refer to Bates numbers corresponding respectively to a February 27, 2013, Applicant Amendment and Response to Non-Final Office Action and a December 15, 2008, Applicant Amendment and Response to Non-Final Office Action, both of which the applicant submitted to the Patent Office during the prosecution of the ‘608 patent. These portions of the prosecution history will be included in the Joint Appendix filed by the parties.

## I. "a receiving computer" ('608, claims 1, 14) / "a first computer" ('302, claim 1)

Defendants contend that "the crux of the parties' dispute" is whether the claim language requires "distinction[s]" between (1) "receiving computer" and "second computer" in the '608 patent and (2) "first computer" and "second computer" in the '302 patent. D.Br.3. But this is not in dispute at all. The parties submitted agreed constructions of "second computer" that make this distinction explicit. D.I. 59 at 17 ("second computer" is (1) "computer other than the first computer" ('302 patent) and (2) "computer other than the receiving computer" ('608 patent)).

The real crux of the parties' dispute is twofold. V.Br. 1-3. Defendants altogether ignore Dispute 2 (V.Br. 2-3) and address Dispute 1 (V.Br. 1-2) with two flawed arguments:

*Def. Arg. 1:* interpreting "a receiving computer" and "a first computer" as "one or more" computers "rewrites the claim." D.Br.4.

Construing "a" as "one or more" is not improper rewriting of claim language; to the contrary, under controlling Federal Circuit law, it a "rule" of claim construction. V.Br.1.

*Def. Arg. 2:* because the patentee used the "'one or more' … language elsewhere in the claims," but not here, he must have intended that "a first computer" and "a receiving computer" be limited to a single computer. D.Br.4.

Looking "elsewhere in the claims" to determine the intended meaning of "a first computer" and "a receiving computer" tells us just the opposite. *See* '302, claim 7 ("method of claim 1, wherein the first computer comprises a plurality of computers"); '608, claim 11. [1]

## II. "associating …" limitations ('302, claims 1, 14; '302, claim 13).

*Def. Arg. 1:* the "selected by the user" limitation should be imported into the claim language based on the specification's description of user selection as a feature of "the present invention" and "this invention." D.Br.13.

Under controlling Federal Circuit law, "the use of the phrase 'present invention' or 'this

---

[1] Defendants' contention that VideoShare "alters the claim scope" by not construing "a receiving computer" as "actually perform[ing] the required step of receiving" (D.Br.4) is also wrong. The term being construed is "a receiving computer," not the surrounding claim language "receiving, by a receiving computer … a video file." Accordingly, the requirement that "a receiving computer" must perform the required step of "receiving … a video file" remains.

invention' is not always so limiting, such as where … other portions of the intrinsic evidence do not support applying the limitation to the entire patent." *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1137 (Fed. Cir. 2011) ("the specification does not uniformly refer to a one-call-per-time-period limitation as being co-extensive with the entire invention").

Here, other portions of the intrinsic evidence do not support applying the "selected by the user" limitation to the entire patent. The specification does not uniformly refer to a "selection by the user." Instead, the patent clearly indicates that the patented invention also encompasses "leaving the selection to the determination of the server computer system." '302, 2:30-31 ("Summary of Invention").[2] Accordingly, Defendants' proposed limitation must be rejected.[3]

*Def. Arg. 2:* "user selection" "is consistent with other similar video hosting systems of the time." Mot., 13.

*First*, this is an attorney assertion with nothing cited in support—no cites to the intrinsic record, prior art, or expert testimony. *Second*, whether the user selects the ad in *other* systems is irrelevant, especially when, *in the patented system*, the "host computer 60 [i.e., not the user] can select an advertisement." '302, 15:36-37.

**III. "streaming video file comprising a streaming video format" ('608, claims 1, 14; '302, claims 1, 14).**

Defendants' sole criticism of VideoShare's construction—that it "reads out the recited 'video format'" limitation (D.Br.8)—fails. The "format" refers to the way the data is arranged in the video file. Almeroth ¶30-31; *Webster's Computer Dictionary* 224 (3rd ed. 1999) ("format" means "a particular arrangement") (Ex. 2). VideoShare's construction incorporates this meaning:

---

[2] *See* '302, 2:35-36 ("default selection can include a substantially randomized selection of an advertisement); 15:36-37 ("host computer 60 can select an advertisement").

[3] *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1326 (Fed. Cir. 2008) (holding that references to a feature of "this invention" or "a useful feature of this invention" do not provide a basis to import that feature into the claims when they are "contradicted by … express statements in the … specification clearly indicating that [the feature] is a feature only of certain embodiments, and not of all embodiments, of the invention").

"video file containing data arranged in a way that the file is capable of ...."[4]

Defendants' defense of its "format characteristics and identifiers" limitation fails. *First*, Defendants assert that one of ordinary skill would understand "streaming video format to be format characteristics and identifiers" (D.Br.7), but they fail to explain how this could possibly be true given that *any* video format, including those that are not "video streaming formats" can have "format characteristics and format identifiers." Almeroth ¶ 33. Tellingly, Defendants' own expert offers no testimony in support of Defendants' construction. D.I. 56-1. *Second*, Defendants confirm that they imported their "format characteristics and identifiers" limitation from a passage ('608, 14:22-25) that cannot inform the meaning of "streaming video format" for three independent reasons identified in VideoShare's Opening Brief. V.Br.5-6. [5]

## IV. "embedding the identification tag [comprising the video frame image] into a webpage" ('608, claims 1, 14; '302 claims 1, 14).

Defendants (a) offer no justification for replacing the claim term "web page" with "website," and (b) point to nothing in the intrinsic record (e.g., no definition or disavowal) that supports the "remote from the receiving computer" limitation. *See* V.Br.6-7. Instead, Defendants confirm they are improperly importing a limitation from specification embodiments into the claim language.[6] Moreover, the embodiments in the passages quoted by Defendants do not relate to the claim language at issue here, i.e., embedding an *identification tag* in a webpage; instead, they relate to the unclaimed step of embedding *a video* in a webpage. '302, 6:66-7:3 ("a video

---

[4] Alternatively, to obviate Defendants' concern altogether, the Court could construe the claim language as "video file containing data formatted such that it is capable of ...."

[5] For example, Defendants admit that this limitation relates to the unclaimed step of "determin[ing] the file format" (D.Br.7). Also, they rely on prosecution arguments (D.Br.8, VS-PROHIST001561) concerning "assuring" and "confirming" limitations that were not present in the issued claims. *Id.; see United States v. Telectronics, Inc.*, 857 F.2d 778, 783 (Fed. Cir. 1988) ("Arguments …made at the time the application claims explicitly contained … a limitation cannot furnish a basis for restricting [an] issued claim [that] lacks … such limitation.").

[6] For each passage Defendants cite, they omit the "in an embodiment" language. *See* '302, 6:64; 9:65 ("In different embodiments ..."); '302, 21:31 ("In one embodiment …").

segment embedded into the remote website"); 21:54-56 ("HTML code in the user's clipboard that references the video"). Moreover, nothing in the quoted specification passages requires that the video be embedded "remote from the receiving computer." To the contrary, they teach that the "HTML code that references the video … can be 'pasted' into any Web page that supports HTML inserts" ('301, 21:56), and "any Web page" necessarily includes web pages hosted on websites that are not remote from (i.e. are local to) the receiving computer. Alm.Rpl. ¶ 6. [7]

**V. "receiving, via a webpage …" / "transmitting via a web page …" ('302, claims 1, 14).**

Defendants ignore their "from a user" and "to the user" limitations (*see* V.Br.8) and make two flawed arguments concerning their "remote from the first computer" limitation:

*Def. Arg. 1:* Defendants' construction is "consistent with the plain language of claim 1" because (a) the claim language repeatedly refers to "*a* web page" instead of "*the* web page" and (b) thus "the web pages … (and corresponding web server(s)) are distinct and separate from the first computer." D.Br.15.

Every part of this argument is flawed. *First*, it is beyond dispute that VideoShare's construction, which mirrors the claim language, is *more* "consistent with plain language" than Defendants' construction. *Second*, that the claim language refers to multiple instances of "a web page" instead of "the web page" does not require that each instance of "a web page" be satisfied by a different webpage. To require difference, the claim would have to rewritten as a "first web page," a "second web page," etc. Moreover, in an embodiment where each instance of a "web page" is satisfied by a different web page, nothing precludes these web pages from being located at the same website or web server. Nor does the existence of multiple web pages limit where this website or server is located (e.g. local or remote from the first computer). *Third*, Defendants' erroneous premise that the web pages are "distinct and separate from the first computer" still

---

[7] Defendants also assert that one of ordinary skill "would have understood the … invention to provide the user with control over how and with whom the streaming video is shared." D.Br.6. Nothing about this assertion supports the "remote from a receiving computer" limitation. A user can certainly exercise such control regardless of where the webpage is stored. Alm.Rpl., ¶ 7.

would not support their proposed limitation of "remote from the first computer." "Remote" is not synonymous with "distinct and separate." "Remote" refers to location, not lack of sameness. Alm.Rpl., ¶4; *Dictionary of Computer and Internet Terms* 417 (8th ed. 2003) ( "remote" means "located on a computer far away from the user") (Ex. 14). Something can be distinct and separate from the first computer, and yet not be remote from the first computer.

*Def. Arg. 2:* The prosecution history of the '608 patent supports Defendants' construction of the '302 patent terms at issue here. D.Br.15.

*First*, prosecution history informs the meaning of claim terms only when the patents are from the same patent family. *See Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1349 (Fed. Cir. 2004) ("[T]he prosecution history of one patent is relevant to an understanding of the scope of a common term in a second patent stemming from the same parent application."). The '608 and '302 patents are unrelated patents stemming from different parent applications. Statements in the '608 prosecution cannot limit the language of the '302 claims. *Second*, there were no limiting statements. The cited prosecution history concerns the distinction between "receiving computer" and "second computer." VS-PROHIST002273-002276. It includes no discussion whatsoever of any "web page," much less the claimed "web pages" at issue here. *Id*.

**VI. "a video frame image …" limitations ('608, claims 1, 14; '302, claim 2).**

*Defendants' "middle image" limitation:* Defendants admit their "middle image" proposal limits the claims to "one embodiment." Their proposal must therefore be rejected.

The patents teach the creation of a "thumbnail" or "reference image" (including in the "Summary of the Invention") in over a dozen passages, none of which limit the selected image to the "middle image," *see* '608, Fig 6A (step 640), 6B (step 640), 6C (step 640); 1:67-2:3; 5:26-30; 7:64-65; 10:26-27; 12:41-42; 19:23-24; 21:39-41; 22:51-63; 24:46-49; 26:27-29; 28:63-65. Defendants make no attempt to reconcile these passages with their "middle image" limitation.

The patent also explicitly teaches that "the selection of an image from which to make the 'thumbnail' can be left to the discretion of the user" and thus need not be the middle image. '608, 22:66-23:1. Defendants contend that the user-selection embodiment "cannot be the subject of [the] claims … because in the[] claims, the identification tag is generated … by the 'receiving computer' … not the user." D.Br.10. Defendants' argument depends on the premise that if the receiving computer generates the identification tag, it must also select the image included in the identification tag. This premise is false. The relevant disclosure itself distinguishes between the "selection of an image" and the subsequent act of using that image to "make [i.e., generate] the thumbnail." '608, 22:66-23:1 ("the selection of an image from which to make the 'thumbnail'"). Accordingly, the user can select the image, and the receiving computer can then generate a thumbnail (e.g. a JPEG file) that includes the user-selected image.

*<u>Defendants' "URL or hyperlink" limitation</u>:* Defendants make two flawed arguments:

*<u>Def. Arg. 1</u>:* the claim language tells us that "serving (i.e., actively streaming) the streaming video" is the "purpose" of "the identification tag in a webpage," and this "purpose" is only accomplished by the addition of "a hyperlink or URL." D.Br.10.

Defendants misread the claim language. The claim language tells us that the purpose of the "identification tag" is "*identifying* the streaming video file," claim 1, 30:12-13, not *serving* the streaming video file. The language "for serving the streaming video file" immediately follows, and describes a purpose of, the claimed "web page," not the "identification tag." Claim 1, 30:15-16 ("web page for serving the streaming video file"). This is confirmed by dependent claim 13, which refers back to "the web page for serving the streaming video file" of claim 1. Claim 13, 30:58-59. It does not refer back to the "identification tag … for serving the streaming video file" because identification tags identify; they do not serve.

*<u>Def. Arg. 2</u>:* Defendants' "URL or hyperlink" limitation is compelled by the following statement from the specification: "the identification tag can be embedded in a Web page so that a visitor to the Web page can activate the identification tag,

such as a link to a URL." D.Br.10 (quoting '608, 8:17-22).

*First*, this is a description of "one embodiment." '608, 8:17 ("In one embodiment…"). *Second*, Defendants ignore the multitude of other embodiments that include identification tags that identify a video *without* a URL or hyperlink, e.g., "identifiers, such as a 'thumbnail,' … a file handle, or a file name for the video." '608, 10:26-28; 7:61-8:2. *Third*, the relevant identification tag here is "an identification comprising a video frame image" (i.e. a thumbnail), which identifies the file not by a URL or hyperlink but by using the thumbnail as a reference image to identify the video. V.Br. 10 (quoting patent).

## VII. "executing in response to receiving the video, an automated function automatically performing each of" ('608, claims 1, 14).

*Def. Arg. 1:* "the enumeration of the elements itself implies an order." D.Br.12.

Defendants lack any legal support for this assertion. If a claim drafter intends an order, the claims can be drafted to actually recite an order, with language like "executing the following steps in order." Mere enumeration, absent a recitation of order, is not enough. *Interactive Gift Exp., Inc. v. Compuserve Inc*., 256 F.3d 1323, 1342 (Fed. Cir. 2001) ("Unless the steps of a method actually recite an order, the steps are not ordinarily construed to require one.").

*Def. Arg. 2:* "each limitation refers to the completed element of the preceding limitation." D.Br.12.

Defendants assert "Step (b2) generates an identification tag that represents 'a subject matter of the streaming video file' which does not exist until the streaming video file is created in step (b1)." D.Br.12. This assertion is false. V.Br.11. A subject matter of the streaming video file *does* exist before the streaming video file is created—i.e., before the video file is converted into a streaming video file. V.Br.11. No limitation of step b2 requires the completion of step b1.[8]

[8] This stands in contrast to steps b2 and b3. Step b3 "embedding the identification tag" must be performed after step b2 "generating an identification tag," because an identification tag cannot be embedded before it is created.

*Def. Arg. 3:* "the disclosed embodiments … follow this same recited order." D.Br.12.

This is irrelevant as a matter of law. V.Br. 11-12 (listing cases).[9]

**VIII. "computer" limitations of '302 patent, claim 14 ("first," "second," "third" etc.)**

VideoShare's proposal: Defendants do not dispute any part of VideoShare's proposal. Instead, they propose an additional clarifying limitation not raised for these claim terms during the meet and confer process—that each "computer" in claim 14 is itself a "distinct" computer, D.Br.1, n. 3. VideoShare does not object to this additional limitation so long as it is clear each "computer" need not be entirely separate from, but instead may include overlapping components with, each other "computer," as reflected in VideoShare's proposal. *See Linear Tech. Corp. v. ITC*, 566 F.3d 1049, 1055 (Fed. Cir. 2009) ("second circuit" and "third circuit" do "not require entirely separate and distinct circuits" but instead "can share common components.")

Defendants' § 112, ¶ 6 proposal: Defendants make two flawed arguments.

*Def. Arg. 1:* "The recited 'computer[s]'" are "verbal construct[s]'" or "black box" terms. D.Br.2.

Defendants' argument is contrary to controlling law. A "verbal construct" or "black box" term is a word that is "tantamount to" the word "means"—like "widget," "mechanism," "element," "or "module"—words that do "not have a well-understood structural meaning." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1350 (Fed. Cir. 2015). To the contrary, "computer" has a structural definition well-known in the art. *See* V.Br.16-17.

*Def. Arg. 2:* "a generic computer… is insufficient to avoid invoking … § 112, ¶ 6." D.Br.

*First*, this assertion is contrary to controlling law that § 112, ¶ 6 is not invoked when a term has a structural definition generally known in the art, as does the term "computer."

[9] Defendants abandoned their proposal "without a user interaction with the receiving computer" and now seek no construction for the "automated function" limitation. D.I. 52 at 12; D.I. 59 at 9. However, if the Court leaves this term unconstrued, it would fail to resolve a fundamental dispute about the claim scope. *See* V.Br.12-13 ("Dispute 2"). "When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *O2 Micro Int'l. Ltd. v. Beyond Innovation Tech.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).

V.Br.16-17 (listing cases). *Second*, Defendants' sole support for this proposition is an inapplicable quote from *Williamson* pulled out of context: "the fact that one of skill in the art could program a computer to perform the recited functions cannot create structure where none otherwise is disclosed." D.Br.2 (quoting *Williamson,* 792 F.3d at 1351). This quote pertains to the analysis of the intrinsic record that is required *only if* the claim term itself is a "nonce word."[10] If the claim term is not a "nonce word" (i.e., it has sufficient structural meaning), as is the case with "computer," the analysis ends there and §112, ¶6 does not apply.

## IX. Dependent claims 15 and 16 of the '302 patent.

Defendants' argument does not match their proposed construction.[11]

## X. Means-plus-function elements ('608, claim 14).

> *Def. Arg. 1*: the corresponding structure VideoShare identifies for "format conversion module" and "identification module" is improperly identified as "functional language in conjunction with unspecified software, firmware, and/or hardware." D.Br.9, 17.

What Defendants refer to as "functional language" are the steps of an algorithm from the specification. In a "computer-implemented invention" with "means-plus-function claiming" "the corresponding structure … is the algorithm disclosed in the specification." *Aristocrat Techs. v. Int'l Game Tech.*, 521 F.3d 1328, 1331, 1333 (Fed. Cir. 2008). Here, we have a computer-

---

[10] If a claim term is a "nonce word," the Court then analyses the term "in view of the specification" to determine if it "provide[s] sufficient structure," e.g., whether the programming involved is sufficiently disclosed to provide structure to the term. *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1299 (Fed. Cir. 2014). The cited quote from *Williamson* concerns this second part of the analysis. That is, after the Court determined that "module" is not "understood as the name for structure" (part 1), it analyzed whether the "written description" sufficiently describes the programming involved in the claimed "distributed learning control module" to one of ordinary skill to render it structural (part 2). *Williamson,* 792 F.3d at 1351. Because it did not, and Plaintiff instead relied on its expert's statement, "I would know exactly how to program…," the term was subject to § 112, ¶ 6. In our case, the Court need not reach part 2 of the analysis because the claim term "computer" is itself a structural term, not a "nonce word."

[11] Defendants seek to "clarify" that "the individual sub-computers must continue to perform their recited function" (D.Br.19-20), but in fact their construction would allow them to argue, contrary to the claim language and specification, that each sub-computer must *also* perform the functions of other sub-computers (i.e., those that are part of the larger computer). V.Br.17-18.

implemented invention—the "format conversion module 1540" and "identification module 1450" are implemented in computer software, firmware, or hardware (V.Br. 19-20)—and means-plus-function claiming. Accordingly, the corresponding structure must be the algorithm.

Moreover, the "software, firmware, and/or hardware" of the "format conversion module 1540" and "identification module 1560" is not "unspecified." As the law requires, it is specified as the "software, firmware, and/or hardware" that implements the respective algorithms of the claimed modules. If we identified the computer components implementing the algorithms, instead of the algorithms themselves, we commit the error Defendants make of incorporating structure beyond that necessary to perform the claimed functions. V.Br. 19-20. For example, the patent teaches that "identification module 1560" is a component of "one or more of the mail server B 21, the processing server C 30, and the streaming server D 40" ('608, Fig 1C, 13:62-64), which are in turn components of "host computer 60." ('608 Fig 1D, 16:31-35). By identifying "server D" and "host computer 60" as corresponding structure, Defendants improperly incorporate all the additional components of these structures—e.g., "control module 1510," "receiving module 1520," etc. ('608, Fig 1C)—that are not necessary for the function of the "identification module."

*Def. Arg. 1*: "Plaintiff[] attempt[s] to modify the recited function" of "format conversion module" D.Br.17.

VideoShare's recited function mirrors the claim language except that it construes "a streaming video file" as "one or more streaming video files." This comports with controlling law and reflects the teachings of the specification. *See, e.g.*, '608, Figs 6A-6C.

Dated: September 18, 2015

Respectfully submitted,

FARNAN LLP

*/s/Brian E. Farnan*

Brian E. Farnan (Bar No. 4089)
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301
bfarnan@farnanlaw.com

Gregory S. Dovel (admitted *pro hac vice*)
Richard E. Lyon (admitted *pro hac vice*)
Simon Franzini (admitted *pro hac vice*)
201 Santa Monica Blvd., Suite 600
DOVEL & LUNER, LLP
Santa Monica, CA 90401
Telephone: 310-656-7066
Facsimile: 310-657-7069
Email: greg@dovellaw.com
Email: rick@dovellaw.com
Email: simon@dovellaw.com

***Counsel for Plaintiff VideoShare, LLC***